and others. Pardon me as I have to recede 15 minutes each side. Mr. Gibson for the appellate. Thank you. Your Honors, my name is Fred L. Gibson, Michigan Borough License Number P39530. If I could have three minutes for rebuttal, I would appreciate it. May I? Yes. Oh, I'm sorry. This is an appeal of a dismissal of an unlawful arrest claim that arose up on the early morning hours of November 7, 2011. Officers were called to a house on Ira Street in the city of Warren, stabbing, minor, superficial. The victim identified a female by the name of Angela Bentley, 17 years old, friend of his ex-girlfriend, said she lived on Cunningham Street with her sister, Brooke Amis. Six officers from the city of Warren responded to the home on Cunningham Street, Twardesky, Beechill, Chisholm, Lewis, Adkins, McCabe. Instead of surrounding the house, they all went to the front of the house, two by the street, four up by the house, Chisholm and Beechill went up on the porch, banged on the door, were able to arouse Carmen Amis, the homeowner. Carmen Amis had taken in Angela Bentley, her brother Patrick, who were, to say the least, probably needed some guidance. She had two children, Brooke and Adam. They all resided in the house. This was 2.30 in the morning, 3 o'clock. She'd been sick in bed with the flu and she was awoken from her sleep. She went to the door, Chisholm and Beechill were at the door, said, we're investigating a serious event. We're trying to find Angela Bentley. Is she here? Carmen was under the assumption that Angela was with a friend about a half hour away in the city of Westland. In fact, unbeknownst to Carmen, she was in the house. She had gone to the back door, she was hiding down in the basement. Carmen didn't know that. They asked her, can we come in and search? She had come out, shut the door and said, no, you can't come in and search. She was sick. They said, well, would you go in and search? Would you go in and check to see if Angela was there? She did, readily, didn't balk at it. She came back out and said, no, she's not here. They talked to her some more, still had the same information. We're looking for Angela. We're investigating a serious matter. That's all they said. Didn't give her any other information, what the serious matter was about. Please, go back and check again. She did. Immediately complied. Came back out again, said, no, she's not here. Then Twardowski, who was on the side of the house, comes up, said he heard something on his cell phone that was in the yard. Something about, they're looking for you. Well, he couldn't find the cell phone. There was no evidence confirming that other than Twardowski's statement. But he then goes up on the porch, has some more conversation. Again, we're only looking for Angela. Serious matter. And one of the officers says that he sees a silhouette of a female walking across the front living room window. Well, who is that? And Carmen thinks it's her daughter, Brooke. Goes back inside, would you go and check? Would you please go in and check? Yes. Well, to say the least, Carmen was peeved. Because when she went back in, in fact, Angela was there. She was intoxicated, had to use the bathroom, was trying to sneak up to use the bathroom. Carmen got a hold of her and said, get out there. Get out there. The police are looking for you. Immediately took her outside. She was arrested. And Twardowski, who was standing off to the side here, is talking to her very rudely. And Carmen said, don't talk to me like that. Twardowski says, cuff her. Didn't tell her why she was arrested. So now we've got Angela arrested and Carmen. Take her to the car. All six officers swarm into the house. That's not at issue. The judge upheld the unlawful entry issue. She was charged with, she was arrested for harboring a fugitive. There was no fugitive that was being harbored. Never met that criteria. And when the prosecutor's office reviewed it, they said there's no charge here for harboring a fugitive. She doesn't meet the state law criteria for that. So what'd they do? Had to do something charged with resisting obstructing. A two-year felony instead of a four-year felony. What was she doing to resist and obstruct? Nothing. She knew she was doing nothing. After several hearings on January 12, 2012, even after the prosecutor had been on the job for two months, said we'll let you plead to a 93-day misdemeanor, disorderly conduct. No. So what's he do? He dismisses the case. They're in the courtroom. They go in the courtroom. Case dismissed. As soon as she walks out of the courtroom, says to Twardowski, arrest her. Accessory after the fact to a felony based on the same police reports. Twardowski says, he never talked to me about it. The prosecutor says, yeah I talked to Twardowski. Accessory after the fact to a felony. Five-year felony. That was authorized by the prosecutor. Let me just correct you, Your Honor. Based on the same facts. No, but I mean it's outside the scope of this lawsuit. What's that? It's outside the scope of this lawsuit. No, that's part. The unlawful arrest is the initial arrest, Your Honor. But I mean, so the later arrest, the accessory after the fact, is outside the scope of the lawsuit. Well, I consider that the second arrest. Based on the same facts and circumstances. Well, who cares what arrest it is? It's outside the scope of this lawsuit. Okay, Your Honor. Isn't it? I don't believe so, because it was dismissed and she was arrested a second time. Same facts and circumstances. How does the police officer get liable for the prosecutor's decision? Because the prosecutor said he talked to the officer, read the same police reports, same facts and circumstances. Didn't meet the criteria for accessory or the fact. And the officer knew that. Then it appears that it's the prosecutor's decision that's the problem. No, it is a problem, Your Honor. I adopt that. It is correct. But we're still talking about the first arrest and everything that occurred after that, that was piled on afterwards. May I? There was a preliminary examination held after that and the district court judge dismissed the charge. Because for accessory after the fact, there has to be a knowing and willing knowledge of the felony and you're harboring that person. Excuse me. You have knowledge of that and you're secreting that person. With regard to the initial arrest, there was absolutely no probable cause to arrest Carmen Amos for anything. Carmen Amos, as the district court judge said, when she was standing on the porch, she could have just as easily have said, get a warrant. Go back and she could go back in the house. How do you deal with the obstruction charge? I mean, I get the harboring. I get the accessory after the fact. But clearly, Ms. Amos' intent, actual intent, is very much an issue. But it appears, to me at least, that there's a strong argument to be made that given the fact that she didn't produce Angela until she went in the house the third time after one of the officers had seen her, Angela I mean, it would seem that there might have been probable cause for the officer to have believed that her intent was other than to produce Angela at the first available opportunity. Your Honor, she neither resisted nor did she obstruct. She didn't do anything at that fact. Well, arguably, she failed to reveal the presence of someone who was in her home and represented that that person was not there. And then you, Your Honor, would agree that there's an issue as to the facts that led to that probable cause. Well, there are fact issues. But that doesn't really affect the probable cause for the officer. I mean, the fact that the officer did not do an investigation that ended in a conclusion that your client was truthful really doesn't go to the probable cause determination. In order to obstruct, you have to have some action by Ms. Amos to do so. She continued to comply with the police officer's directions and requests. Well, I mean, they didn't know that. They didn't know that, I mean, they knew she went back in the house. But they didn't know whether she was conducting a legitimate search for Angela or not. In fact, one might have concluded that she did not, that she did not want Angela to be found. And she could have when the officer said, who is that walking by the window? They didn't identify Angela. It was just somebody, what appeared to be a female, walking by the window. And Carmen said, well, it's my daughter, because that's who she thought was in the home. Well, and that, to the police officer, would be another indication that she was attempting to hide something. But then you're talking about the hiding, the accessory, or the harboring, not obstructing. She did everything that the officer wanted her to do. So why is that not, why does the knowing failure, I mean, the knowing concealing of a suspect for whom the officers are looking, why does that not constitute obstruction under Michigan law? Because it requires some affirmative act. And she didn't engage in any affirmative act to obstruct. She complied. That's the issue. Well, she arguably, she complied by going in the house, but arguably she failed to comply by telling a falsehood. Again, that's the issue on the probable cause. There's an issue of fact there, and it should not have been dismissed. That's the law when we're talking about an issue of fact relating to probable cause. I'm not disagreeing with you. I'm not disagreeing with you about the existence of an issue of fact. I'm merely saying, I understood you to be arguing that as a matter of law there was no probable cause for the obstruction charge. Your Honor, my red light is on. I am arguing that there was no probable cause for the obstruction charge or any charge against Ms. Amos at that time. Good morning, Your Honors. Megan Cavanaugh appearing on behalf of Officer Twardeski. I don't have much to add to my brief, but I will say that the question here is one of qualified immunity, and as the district court concluded, plaintiff can't show that Twardeski, Officer Twardeski, could not have reasonably believed that he had probable cause to arrest her for the crime. With respect to the resisting and obstructing backup, I think that the crime that he thought, that Officer Twardeski thought he was arresting her for or his subjective assessment of the crime, when you parse out the statute and that, it may not have been the correct charge, and in fact I think the prosecutor agreed that it wasn't the correct charge. But that doesn't necessarily mean that he didn't have a reasonable belief that Angela was escaping from lawful custody. And in fact, Judge Cohn, the district court judge, concluded that he was entitled to qualified immunity on that charge. But even if that were not correct, and this plaintiff recognizes that he has to establish that there was no charge for which there wasn't probable cause, that the resisting and obstructing, opposing or obstructing an officer performing their duty, perhaps it would have been a harder case if Ms. Amos had said, no, I'm not going in, or no, you can't come in, and no, I won't go in and look and see if Angela is there. Arresting her for resisting and obstructing for her failure to go in may be a harder question, although at the time, under Michigan law and people versus Ventura, I think the officers would still have had a basis to arrest her for resisting and obstructing. But in this case, as Judge Gibbons points out, she did agree to go in. And when she did and represented, what she couldn't do is then lie about it. And when she went in twice and said, I looked, I called for her, she's not here. In this case, it's on the obstruction. You're not arguing the harboring case right now. Yeah. I mean, I don't think Judge Cohn found that there was that Twardesky would have been entitled to qualified immunity, that it wasn't plainly incompetent to believe that he had probable cause to believe that that charge had been met. I think resisting and obstructing are lies about who was in the house. Is that what you're saying? Right. I mean, and again, it's the question of would Officer Twardesky, did he reasonably believe that he had probable cause to believe that what she couldn't do is affirmatively represent that she was not there? And based on what he knew that he had reason to believe that she was there, based on the victim having reported that she was there, this information that she was there, and then plaintiff going in twice, I mean, this is not a particularly big house, and on the third time comes out and they see her in the window. Again, it's a reasonable suspicion of resisting and obstructing. And again, and then the question of qualified immunity is, can you say that it was plainly incompetent for Twardesky to believe that he did have probable cause, which is a very difficult thing to understand or how that claim could be made in this case, when the prosecutor believed, at least in initially charging her and bringing the charge for resisting and obstructing, that at least probable cause had been made. And again, it's excessive. Can I ask you about that obstruction charge? Yes. In Michigan law, isn't that usually applied in instances where there's an actual assault or physical interference with the police officer more so than the factual situation we have here? I think that it typically applies in cases more like that, but the definition of obstruction under the statute is physical interference with an officer and or the knowing failure to comply with a lawful command. And at the time, again, as I had mentioned under People v. Ventura, the Michigan appellate courts had held that a person does not have a right to resist an unlawful command. Subsequently, the Supreme Court in People v. Moreno said, no, that can't be right. You do have a right to do that, but at the time that this was at issue, she didn't have a right to resist an unlawful command, assuming that it was a lawful command. But again, and I think that the affirmative conduct that Plaintiff Claims is lacking is the affirmative representation that she wasn't in there. And again, while there may be explanation, and again, while there may have been a question of fact, the state criminal court found wouldn't have been enough to establish probable cause doesn't mean that this officer was not entitled to qualified immunity for reasonably believing that it did exist. If you have any other questions, I'd be happy to answer. Thank you. Thank you. Your Honor, it's interesting that the defendants now argue that it's only because Carmen complied that there may be an issue whether she obstructed. They indicate and confirm and agree that had she just stood there and do what the district court said that she had a right to do, go away, shut the door, and get a warrant. Then they'd have a more difficult time, as defendants just indicated. But instead, she complies with each of their requests. Now, what the officers thought, if they thought things were that serious, they would have gone right in. But they ask, and she complied each and every time, and in accordance with the defendants' argument here, because she complied, now she's on the hook for obstructing. It doesn't make sense, Your Honors. And Judge Cohen got all of his arguments correct in his opinion and order. However, it didn't carry it through. In fact, the opinion from Judge Cohen didn't even address the resisting and obstructing to any real effect. And that's why we're here, and that's what the justices seem to be concerned about, is the resisting and obstructing. Again, Carmen Amos did absolutely everything. She went above the call of duty here in responding to the officer's request and did what they asked her to do. Unbeknownst to her, the wayward niece had snuck back in the house, and she was hiding in the basement. There's an issue of fact here, and the officer is not entitled to qualified immunity. Your Honors, thank you very much. Thank you, and case is submitted.